Titone, J.
(dissenting). There are no "particular circumstances” in this case that warrant unusual or specialized treatment (see, majority mem, at 1011). This case, like any other, simply presents a set of individualized facts to which well-established methods of legal analysis must be applied. Since I cannot agree with the manner in which the majority has applied the undisputed legal principles to the facts in this case, I respectfully offer my dissenting views.
The time for commencing a mandamus proceeding against a public officer or agency begins to run when the officer or. agency refuses a specific demand to perform a duty enjoined by law (Matter of De Milio v Borghard, 55 NY2d 216, 220; Austin v Board of Higher Educ., 5 NY2d 430, 442). The refusal must be unequivocal, for anything less would impose an unfair burden on potential litigants (see, Matter of Castaways Motel v Schuyler, 24 NY2d 120, 126; Matter of Fischer v Roche, 81 AD2d 541, affd on opn below 54 NY2d 962; 8 Weinstein-Korn-Miller, NY Civ Prac ¶ 7804.02, at 78-110; see also, City of New York v State of New York, 40 NY2d 659, 670 [statute requires "clear and formal statement”]). Further, a contrary rule would burden the courts by encouraging potential claimants to sue at the first hint of a dispute, thereby breeding premature and, in many instances, unnecessary litigation.
Indeed, it was for these reasons that the drafters of CPLR 217, which governs the time within which an article 78 proceeding must be brought, rejected a provision that would have fixed accrual at the moment a demand was "expressly or impliedly” refused. As the drafters concluded, a " 'petitioner should not have to bear the risk of guessing correctly as to when a court would find an implied refusal had occurred’ ” (8 Weinstein-Korn-Miller, op. cit, at 78-110 & n 25, quoting 1961 Senate Finance Comm Rep, at 64; 5 NY Adv Comm Rep, at A- *1012 153 [advance draft 1961]; see, Matter of Castaways Motel v Schuyler, supra, at 126-127). Ironically, that is precisely the result that the majority’s analysis in this case suggests.
The purpose of petitioners’ proceeding was to compel the Department of Environmental Conservation (DEC) to honor the February 2, 1982 "nonwetlands” letter that it issued pursuant to ECL 24-0703 (5).[1] The majority identifies respondent’s form letter declining to process petitioners’ application for a State Pollution Discharge Elimination System (SPDES) permit as the "refusal” necessary to trigger the running of the four-month limitations period for this proceeding. However, the situation was so fraught with ambiguity that this letter simply cannot be deemed an "unequivocal” abrogation of the prior "nonwetlands” letter.
First, the application that led to the issuance of the letter concerned a SPDES permit, not a freshwater wetlands permit. Thus, while it is true that the requested SPDES permit could not have been issued if the parcel in question were a designated wetland (see, ECL 24-0705), petitioners’ application could hardly be considered a clear and direct demand that DEC adhere to its earlier "nonwetlands” letter. At most, the application could be construed to contain an implicit assumption, based on the commitment in the "nonwetlands” letter, that the parcel in question was eligible for development.
Second, the agency’s response to the application was a mere form letter with checked boxes indicating not that petitioners’ application had been rejected, but rather that it was "incomplete” due, at least in part, to "pending mapping of freshwater wetlands at project site.” There was no clear statement that additional, as opposed to previously designated, parcels were to be "mapped” as wetlands. Indeed, the February 2, 1982 "nonwetlands” letter was not even mentioned. This was hardly the clear and explicit refusal to honor the earlier "nonwetlands” letter that CPLR 217 demands.
*1013 Finally, the DEC form letter contained an obvious error, in that it indicated a mistaken belief that both a SPDES and a freshwater wetlands permit were being sought. Under similar circumstances, this court has held that an applicant is entitled to treat the agency’s notice as equivocal and seek correction or clarification (Matter of Brayer v Lapple, 44 NY2d 741). The same analysis should apply here. Given the ambiguity of the agency’s notice, petitioners were entitled to seek clarification on the theory that the February 2, 1982 "nonwetlands” letter had simply been overlooked.
Apparently mindful that the DEC notice was not in itself unequivocal, the majority has attempted to bolster its holding by relying on earlier discussions between petitioners’ representatives and DEC officials in which the possibility of additional wetlands designations was discussed.[2] However, like the DEC’s form letter response to petitioners’ SPDES application, these discussions, which apparently also included no mention of the February 2, 1982 "nonwetlands” letter, furnished, at best, no more than a hint that the agency might be preparing specifically to repudiate that letter.
Most disturbing of all is the majority’s reliance on its own estimate of the impact that these discussions might have had on petitioners’ subjective state of mind. Acknowledging that the DEC document might appear on its face to be "ambiguous to an outsider” (majority mem, at 1010), the majority goes on to assume that it must have had a clear and unequivocal meaning to petitioners because of the implications of the prior discussions. I fail to see how an ambiguous form letter, coupled with the ambiguous implications of informal discussion, can add up to a clear and explicit agency refusal sufficient to satisfy CPLR 217. Further, resort to speculation about the subjective understanding of the litigants is precisely the type of uncertainty that the drafters of CPLR 217 were trying to avoid.
*1014 Under the majority’s analysis, not only do the parties bear the risk of guessing whether the court will infer a refusal from the objective "surrounding circumstances”; they also bear the risk that the court will itself attempt to guess at what the parties "must have” inferred from all of the circumstances of which they were subjectively aware. In my view, that result is directly contrary to the intentions of CPLR 217’s drafters, as well as the existing case law. Accordingly, I would hold that the DEC notice was too equivocal to constitute a refusal, that the agency’s first clear refusal to comply with the duty imposed by ECL 24-0703 (5) was its answer to petitioners’ petition and, finally, that petitioners’ proceeding was not barred by the Statute of Limitations.
Chief Judge Wachtler and Judges Simons, Alexander, and Bellacosa concur; Judge Titone dissents and votes to reverse in an opinion in which Judges Kaye and Hancock, Jr., concur.
Order affirmed, with costs, in a memorandum.

. ECL 24-0703 (5) provides: "Prior to the promulgation of the final freshwater wetlands map in a particular area and the implementation of a freshwater wetlands protection law or ordinance, no person shall conduct, or cause to be conducted, any activity for which a permit is required * * * unless he has obtained a permit from the commissioner under this section. Any person may inquire of the department as to whether or not a given parcel of land will be designated a freshwater wetland subject to regulation. The department shall give a definite answer in writing within thirty days of such request * * * such an answer in the negative shall be a complete defense to the enforcement of this article as to such parcel of land” (emphasis supplied).

. The majority also relies on the fact that the failure to process the SPDES application was the sole basis in the petition for petitioners’ complaint that DEC has failed to abide by the letter (majority mem, at 1010). I do not find this fact to be particularly compelling, however, since, in the absence of a more direct refusal by the agency, the agency’s actions in connection with the SPDES application were the only concrete facts that petitioners could cite in support of their demand for relief. Such evidentiary allegations should not be equated with the underlying alleged wrong on which the request for relief was founded — i.e., the agency’s refusal to honor its February 2, 1982 "nonwetlands” letter.